GEORGE DEVORY, PLAINTIFF–APPELLANT, v. DEPARTMENT OF HUMAN SERVICES, ANN KLEIN, COMMISSIONER; DIVISION OF PUBLIC WELFARE, G. THOMAS RITI, DIRECTOR, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted March 25, 1980—Decided April 2, 1980.

414

Before Judges MATTHEWS, ARD and POLOW.

*Geraldine Burrows Longo,* for appellant.

*John J. Degnan,* Attorney General of New Jersey, for respondents (*Erminie L. Conley,* Assistant Attorney General, of counsel; *Andrea M. Silkowitz,* Deputy Attorney General, on the brief).

PER CURIAM.

Plaintiff is a 72–year–old resident of a nursing home whose monthly medical costs are paid partially by general assistance funds from Clifton Municipal Welfare, granted to him when he was deemed ineligible for the State's Medical Assistance for the Aged (MAA) plan. His appeal from the fair hearing decision by the Division of Public Welfare attacks the manner in which the plan is implemented by the Commissioner of Human Services (Commissioner).

Plaintiff apparently qualified for MAA because he met all the criteria stipulated in the eligibility statute:

> Subject to the provisions of this act, any resident of New Jersey who has attained the age of 65 years, who is not eligible to receive medical assistance pursuant to chapter 413 of the laws of 1968, and whose income and resources are insufficient to meet the costs of health services provided under this act, shall be entitled to receive medical assistance for the aged. [*N.J.S.A.* 44:7–76]

He was over 65 and ineligible for Medicaid, and his family income was inadequate to meet the costs of his nursing home care. *N.J.A.C.* 10:83–1.1. The MAA act (*N.J.S.A.* 44:7–77(b)) specifically provides for payment of the costs of skilled nursing care of the type plaintiff receives. See also, *N.J.A.C.* 10:83–3.8.

Plaintiff was rejected from the MAA plan because his monthly income of $999.60 exceeded the income eligibility cap of $650 promulgated by the Commissioner for people in his category.[1] Plaintiff contends that the Commissioner deliberately set the MAA cap lower than the Medicaid cap ($855.60) so that most older, medically needy persons automatically qualified for Medicaid and were funneled through it. The State thereby acquired federal funds to subsidize the cost of medical care for its needy

---

[1] Six-hundred and fifty dollars ($650) represents the upper income limit for married couples, when one spouse is confined to a nursing home while the other continues to live in the community.

aged, and avoided expending its own funds on the wholly state–supported MAA plan. The consequence to a few of the medically indigent aged like plaintiff, however, was that they qualified for neither program, yet could not pay their medical bills. Plaintiff contends the Commissioner emasculated the MAA plan, circumventing the Legislature's intent to benefit a class of older people who, but for traumatic illness, would be self–supporting.

He, therefore, requests that the regulations establishing the MAA income caps, *N.J.A.C.* 10:83–6.6(c)1 and 10:83–6.6(d)4, be declared invalid.

Plaintiff unquestionably meets the MAA qualification criteria in *N.J.S.A.* 44:7–76. But he does not meet the specific income criteria promulgated by the Commissioner pursuant to her broad authority to implement the MAA act. *N.J.S.A.* 44:7–77 and *N.J.S.A.* 44:7–81(c).

Contrary to plaintiff's contentions, the Commissioner has not wholly abandoned MAA by fashioning it to coincide with Medicaid benefits. As MAA presently operates, funds are available for the care of qualified individuals in plaintiff's category whose income is above $324 but below $650 a month, and who are confined to a nursing home for an initial period of one month or less. That one–month period coincides with the initial one–month period under the Medicaid plan when the Medicaid caps are set at a rate considerably lower ($324 a month for someone in plaintiff's category) than the subsequent rate of $855.60. Thus, MAA eligibility coincides with Medicaid ineligibility, tiding applicants over the crucial initial one–month period until they qualify under the later, higher Medicaid cap.

Defendants argue that, although the Commissioner was given a broad mandate to provide medical care for the poor, available aid is limited. MAA was not intended to cover all of the medical costs of the medically indigent aged, *N.J.S.A.* 44:7–77 and *N.J.S.A.* 44:7–81(c); therefore, the Commissioner acted well within her statutory discretion when she provided MAA for periods of less than one month only. The Legislature empow-

ered the Commissioner to implement the act in conformity with her perception of current need, other existing or contemplated medical assistance programs and fiscal considerations. Her decision to reimburse providers for nursing home care of less than one month's duration only is consistent with her legislative mandate.

Although administrative regulations are presumptively valid and reasonable, *Consolidation Coal Co. v. Kandle*, 105 *N.J.Super.* 104, 118–119 (App.Div.1969), aff'd o. b. 54 *N.J.* 11 (1969), they must be within the fair contemplation of the delegation of the enabling statute. An administrative agency possesses powers expressly granted to it and those incidental powers reasonably necessary to effectuate its statutory responsibilities. *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 561–562 (1978); *In re Heller's Suspension*, 73 *N.J.* 292, 303 (1977).

Here, it appears that the Commissioner complied with the technical language of the act. She promulgated regulations that cover part or all of the medical expenses of aged persons in nursing homes *if* they are confined for less than one month. Both *N.J.S.A.* 44:7–77 and *N.J.S.A.* 44:7–81 appear to place the scope of MAA coverage squarely within the exercise of the Commissioner's discretion. They allow her to determine both what the regulations shall be and to what extent payment of nursing home services will be authorized. *N.J.S.A.* 44:7–81; *N.J.S.A.* 44:7–77(b).

The Legislature has not taken steps to expand the act's coverage to persons other than those already within the purview of the present regulations promulgated by the Commissioner. Such legislative inactivity suggests satisfaction with the relative dormancy of the act. Compare *East Orange v. McCorkle*, 99 *N.J.Super.* 36, 47 (App.Div.1968).

We disagree with defendants' suggestion that the issues here are moot because plaintiff presently receives nursing home care at public expense through a general assistance program. Not only does he raise issues "of great public importance com-

pelling definitive resolution despite mootness," he also raises a real issue of financial loss occasioned by his divesting himself of his life's savings in order to qualify for general assistance. *Oxfeld v. New Jersey State Bd. of Ed.*, 68 *N.J.* 301, 303 (1975). Nonetheless, in view of the Commissioner's implementation of the legislative design, the decision denying plaintiff MAA benefits is affirmed.